IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| John Woods, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: 2:11-cv-02932-PMD |
| v. | ) |
| | ) |
| The Boeing Company, | ) **ORDER** |
| | ) |
| Defendant. | ) |

This matter is before the Court upon Defendant The Boeing Company's ("Defendant" or "Boeing") motion to dismiss Plaintiff John Woods's ("Plaintiff" or "Woods") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth herein, the Court grants Defendant's motion to dismiss.

## BACKGROUND

Plaintiff is an engineer who was hired by Boeing in 2009 to create and design repair templates for a commercial aircraft called the 787 Dreamliner. On or about July 13, 2010, Plaintiff reported to Boeing that he was experiencing harassment and retaliation as a result of his insistence on adhering to quality and safety standards imposed by several agencies.[1] Plaintiff alleges that despite his reporting efforts, the harassment and retaliation continued, and he informed Boeing that the harassment and retaliation were causing production delays in his work.

On September 14, 2010, Plaintiff made a second report to Boeing Ethics about the harassment, retaliation, and mismanagement he was experiencing, including other complaints of

---

[1] Agencies such as: the Federal Aviation Authority ("FAA"), Occupational Safety and Health Administration ("OSHA"), the U.S. Department of Labor ("DOL"), and the State of South Carolina.

1

discrimination.[2]  Boeing fired Plaintiff on September 21, 2010, and subsequently dismissed Plaintiff's report.

According to Plaintiff, because his concerns were related to the health and safety of all employees, he made a formal complaint to the FAA, OSHA, and the DOL.  In a letter dated July 27, 2011, attached to the complaint as Exhibit A, the FAA informed Woods that "a violation of an order, regulation, or standard relating to air carrier safety operations may have occurred and the FAA was taking appropriate corrective action." Compl. ¶ 12.  Plaintiff states that he has exhausted all administrative remedies, and Defendant has refused to reinstate him or allow him to participate in ADR.

## PROCEDURAL HISTORY

On September 20, 2011, Plaintiff filed this action against Boeing in the Court of Common Pleas for Charleston County, South Carolina. The complaint alleges that Defendant violated the South Carolina Whistleblower Act ("the Act"), S.C. CODE ANN. § 8-27-10 *et seq*. On October 27, 2011, Defendant filed a notice of removal pursuant to diversity jurisdiction.  On November 17, 2011, Defendant filed a motion to dismiss and memorandum in support.  Plaintiff filed a response to Defendant's motion on December 5, 2011, and Defendant filed a reply.

## STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is a challenge to the legal sufficiency of a complaint." *F.T.C. v. Innovative Mktg., Inc.,* 654 F. Supp. 2d 378, 384 (D. Md. 2009).  The Supreme Court recently held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

---

[2] Plaintiff's report also included complaints related to his health under the ADA and other forms of discrimination.  These issues are raised in another lawsuit filed by Plaintiff against Defendant on October 20, 2011, captioned *John Woods v. The Boeing Company*, C.A. No.: 2:11-cv-2855-PMD-BHH.

2

to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1940 (*citing Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950; *see also Harman v. Unisys Corp.*, No. 09-1298, 2009 WL 4506463, at *2 (4th Cir. Dec. 4, 2009). The Court added that "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions," and that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. The Court further noted that "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

## ANALYSIS

Plaintiff contends that Boeing is a "public body" within the definition of the Act and is therefore subject to suit under the Act. The Court disagrees.

The Act provides that a "public body may not discharge . . . any employee of a public body whenever the employee reports a violation of any state or federal law or regulation" or "exposes governmental . . . waste, fraud, gross negligence, or mismanagement." *Spencer v. Barnwell Cnty. Hosp.*, 444 S.E.2d 538, 540 (Ct. App. 1994) (citing S.C. CODE ANN § 8-27-20). Section 8-27-50 states that the Act does not apply to "nonpublic, private corporations." A whistleblower's claim may lie against a "public body," which is expressly defined by the statute to include:

> a department of the State; a state board, commission, committee, agency, or authority; a public or governmental body or political subdivision of the State, including counties, municipalities, school districts, or special purpose or public service districts; an organization, **corporation**, or agency **supported in whole or in part by public funds or expending public funds**; or a quasi-governmental body of the State and its political subdivisions.

S.C. CODE ANN. § 8-27-10(1) (emphasis added).

It must be determined whether Boeing is a corporation "supported in whole or in part by public funds," and therefore a "public body." Boeing argues that it is not a "public body" because the State received benefits in return for the incentives offered to Boeing. In support of its position that a private corporation receiving public funds pursuant to a *quid pro quo* agreement does not convert it into a "public body," Boeing points to *Weston v. Carolina Research & Dev. Found.*, 401 S.E.2d 161 (S.C. 1991), and *Sutler v. Palmetto Electric Coop., Inc.*, 481 S.E.2d 179 (S.C. Ct. App. 1997). The case law in South Carolina pertaining to this issue is limited to these two cases. As such, Plaintiff relies on the same cases in support of his position that a massive capital investment of public money in Boeing makes an otherwise private corporation subject to the Act.

In *Weston*, a private, non-profit corporation ("the Foundation") argued that it was not subject to the FOIA statute despite receiving the support of public funds. *Weston*, 401 S.E.2d at 164. The language used to define "public body" in the FOIA is identical to the language used in the Act. The court held that the Foundation was a public body because it had accepted federal grant money and grants from the City of Columbia and Richland County; undertook to administer the expenditure of that money; and ultimately acted as an agent for a state university. *Id.* at 162-64 ("The Foundation operates exclusively for the benefit of the University of South

4

Carolina."). The court made an important distinction[3] when it interpreted "supported in whole or in part." It stated that when a business enterprise "receives payments from public bodies in return for supplying specific goods or services on an arm's length basis," the FOIA may not necessarily apply. *Id.* at 165.  But, "when a block of public funds is diverted *en masse* from a public body to a related organization, or when the related organization undertakes the management of the expenditure of public funds," the FOIA applies. *Id.* (emphasis in original).

In *Sutler*, the court directly applied this distinction to a case involving the State's Whistleblower Act.  In that case, a private company ("the Cooperative") received low-interest loans from a federal agency, pursuant to the Rural Electrification Act, in exchange for the Cooperative "furnishing and improving electric and telephone service in rural areas." *Sutler*, 481 S.E.2d at 180.  The court highlighted that unlike in *Weston*, the Cooperative did not receive any federal or state grants; instead, it secured a favorable loan on the condition that it complies with the requirements of the Electrification Act.  *Id.* at 181. Therefore, the court held that "[j]ust as the FOIA does not apply to enterprises that accept payments from public bodies in exchange for services, the Whistleblower Act does not apply to [the Cooperative], who provides electricity . . . in exchange for loans with beneficial interest rates." *Id.*

Pursuant to the State General Obligation Economic Development Bond Act ("Bond Act"), the South Carolina Legislature issued economic bonds worth millions of dollars to Boeing to build a plant in North Charleston.  For that reason, Plaintiff alleges that Boeing is a "public body" because it is supported in part by public funds from the State of South Carolina and/or expending public funds.  However, the purpose of the Bond Act is to foster economic

---

[3] Other courts have made this same distinction in interpreting the provision "supported in whole or in part by public funds." *See Kneeland v. NCAA*, 850 F. 2d 224 (5th Cir. 1998); *Indianapolis Convention & Vistors Ass'n v. Indianapolis Newspapers Inc.*, 577 N.E.2d 208 (Ind. 1991); *Adams Cnty. Record v. Greater North Dakota Ass'n*, 529 N.W.2d 830 (N.D. 1995).

development within the State, and the issuance of these bonds is conditioned on compliance with the requirements set forth in the Bond Act. *See* S.C. CODE ANN. § 11-41-20(7) (stating that the authorization of debt is necessary to foster economic development in the State); *see also* § 11-41-30(2)(a), (c) (stating that in exchange for investing "at least four hundred new jobs are created," and the "job creation requirements must be attained"). Therefore, the situation between Boeing and the State is more analogous to the situation in *Sutler*. *See Sutler*, 481 S.E.2d at 181 ("[T]he Cooperative met the *quid pro quo* condition . . . [it] cannot obtain the loans unless it complies with the requirements set out in the Rural Electrification Act."). Boeing has provided, and continues to provide, jobs to an area within the State that would otherwise not have jobs. In exchange for this service, under a negotiated agreement governed by the Bond Act, Boeing has received and will continue to receive payments from the State. The Court finds that this type of situation satisfies the *quid pro quo* condition, and as a result, Boeing is not a "public body" under the Act. *See id.* (holding that the Act does not apply to "a situation where a business enterprise receives payment from public bodies in return for supplying specific goods or services on an arm's length basis").

Plaintiff also contends that under the reasoning of *Weston*, the Act does apply to Boeing because it received a "block of funds *en masse* and has put those funds into the production of a facility it manages on behalf of its investors." Pl.'s Opp. Memo at 7. Boeing did receive a massive amount of public money; however, Boeing is not a "related organization" to the State. *See Weston*, 401 S.E.2d at 165 (The Act applies "when a block of public funds is diverted *en masse* from a public body to a **related organization**, or when the related organization undertakes management of the expenditure of public funds.") (emphasis added). Unlike the Foundation in *Weston*, Boeing does not act as the State's agent nor does it operate for the sole benefit of the

6

State.  Boeing manages and spends the money it receives on behalf of its investors, not the State, and it uses the money to carry out its business of manufacturing planes, not the business of the State.  Additionally, Boeing provides a service to the State in return. *See id.* at 164 (there is no evidence that the Foundation "actually performed any services" to earn the fee).  The Court is not persuaded by Plaintiff's argument under *Weston*, and therefore dismisses Plaintiff's complaint.

Furthermore, the Court denies Plaintiff's request for leave to amend the complaint to include "alternative and other claims" because such an amendment would be futile.[4]  *See Foman v. Davis*, 371 U.S. 178, 182 (the "grant or denial of an opportunity to amend is within the discretion of the District Court" (citing Fed. R. Civ. P. 15(a))).  Pursuant to Federal Rule of Civil Procedure 15(a)(2), "leave to amend a complaint should be freely given 'when justice so requires.'" *Fields v. Walpole*, No. 11-1000, 2011 WL 6217081, at *2 (D. Md. Dec. 13, 2011).  So, "'leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile.'" *Id.* (citing *Matrix Capital Mgmt. Fund., LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009)).  If an amendment would fail to withstand a motion to dismiss, it is futile. *Id.*; *see also Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). Thus, "if the well-pleaded facts in the proposed new complaint do not amount to a 'showing' that the plaintiff is entitled to relief," the court should deny a motion for leave to amend. *Id.*; *see Ashcroft v. Iqbal*, 129 S.Ct.

---

[4] The Court notes that Plaintiff does not have a right to amend under Fed. R. Civ. P. 15(a) because Defendant has filed a responsive pleading—Defendant's Reply Memorandum In Support Of Motion To Dismiss.  *See Hall v. Burney*, No. 11-6566, 2011 WL 5822176, at * 2 (4th Cir. Nov. 18, 2011) ("[T]he doctrine of futility only applies when the plaintiff seeks leave of court to amend and does not have a right to amend." (citing *Galustian v. Peter*, 591 F.3d 724, 730 (4th Cir. 2010))).

7

1937, 1950 (2009) (explaining that a "showing" is more than the "mere possibility of misconduct").

Plaintiff fails to state any specific claim(s) against Defendant in his request, thereby, denying the Court the ability to make a determination and denying notice to Defendant. *See Shonk v. Fountain Power Boats*, 338 Fed. Appx. 282, 285 (4th Cir. 2009) (asserting that proposed amendment was futile because it failed to state a claim against defendants). Plaintiff did not file a motion with the Court, but requested leave to amend in the last paragraph of his response to Defendant's motion to dismiss. Additionally, Plaintiff did not provide the Court with a proposed amended complaint or provide any explanation as to why these unidentified, "alternative claims" could not have been brought earlier. Plaintiff's request failed to qualify as a motion for leave to amend, *see* Fed. R. Civ. P. 7(b), 15(a), and the Court finds that such a request would be futile. *See Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630-31 (4th Cir. 2008) ("[W]e cannot say that the district court abused its discretion by declining to grant a motion that was never properly made."); *see e.g.*, *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004) ("While Federal Rule 15(a) provides that leave to amend shall be freely given when justice so requires, a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion with the contemplation of Rule 15(a)." (citing *Kowal v. MCI Commc'ns. Corp.*, 16 F.3d 1271, 1280 (D.C. Cir. 1994))). Therefore, Plaintiff's request for leave to amend is denied.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's motion to dismiss Plaintiff's complaint is **GRANTED** and Plaintiff's request for leave to amend is **DENIED**.

**AND IT IS SO ORDERED**.

PATRICK MICHAEL DUFFY
United States District Judge

**January 3, 2012**
**Charleston, SC**